**UNITED STATES of America, Plaintiff,**

**v.**

**Russell W. MAHLER, Defendant.**

**Civ. No. 82–1545.**

United States District Court,
M.D. Pennsylvania.

April 26, 1983.

Michael Steinberg, Environmental Defense Section, Washington, D.C., David C. Shipman, Asst. U.S. Atty., Harrisburg, Pa., for plaintiff.

Morey M. Myers, William W. Warren, Jr., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

This is a civil action instituted by the United States pursuant to section 311(f)(2) of the Federal Water Pollution Control Act, 33 U.S.C. § 1321(f)(2),[1] to recover the cost of removing oil discharged into the Susquehanna River. The matter is presently before the Court on the motion of the Plaintiff, United States of America, for an order granting the Defendant Russell Mahler immunity under 18 U.S.C. §§ 6002–6003, and requiring him to answer interrogatories and provide other information in this civil action. For the reasons set forth herein, the motion will be granted.

### I

The facts relevant to the instant motion may fairly be summarized as follows. Subsequent to the filing of the Complaint in this case, the Plaintiff served upon the Defendant a set of twenty-five (25) interrogatories for answer pursuant to Fed.R.Civ.P. 33(a). The major substance of these inquiries concerned Mahler's knowledge of and relationship with the various corporations allegedly involved in the discharge of the oil.[2]

To all but one of these questions, the Defendant replied:

"Without waiving any other objection he may have to this question, the defendant objects to answering this interrogatory on the ground that to do so may violate his Fifth Amendment privilege against self-incrimination."

See Document # 17. Thereafter, on March 21, 1983, the Plaintiff filed a motion seeking an immunity order, pursuant to the provisions of 18 U.S.C. §§ 6002–6003, to compel the Defendant to provide discovery information and other testimony in this case. The Defendant Mahler opposes the motion on two grounds: (1) that the government has no authority to grant immunity in a proceeding for civil remedies only; and (2) that a grant of immunity would not be co-extensive with his Fifth Amendment right in that his present testimony may expose him to criminal prosecution for perjury based on past untruthful sworn statements. We will consider each of these objections in turn.

### A

Title 18 U.S.C. § 6003 provides in relevant part:

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States ..., the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order

---

1. 33 U.S.C. § 1321(f)(2) provides in pertinent part:

   Except where an owner or operator of an onshore facility can prove that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing clauses, such owner or operator of any such facility from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section shall be liable to the United States Government for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance by the United States Government in

   an amount not to exceed $50,000,000, except that where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable to the United States Government for the full amount of such costs.

2. This information is particularly relevant because the Defendant has moved to dismiss the Complaint on the basis that, as merely a stockholder and officer in these corporate entities, he cannot be held individually liable. By agreement of counsel and the court, a ruling on all defense motions has been withheld pending disposition of the Plaintiff's motion for an immunity order.

requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.[3]

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

   (1) the testimony or other information from such individual may be necessary to the public interest; and

   (2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.

The immunity statute was added as part of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 927, the major purpose of which was "to provide the criminal justice system with the necessary tools to ... strengthe[n] the evidence gathering process and insur[e] that the evidence will then be available and admissible at trial." *Pillsbury Co. v. Conboy,* —— U.S. ——, 103 S.Ct. 608, 612, 74 L.Ed.2d 430 (1983), quoting from 116 Cong.Rec. 35,200 (1970) (statement of Rep. St. Germain). It superseded and repealed over fifty separate federal immunity statutes and was designed "to bring about uniformity in the operation of immunity grants within the federal system." *United States v. Apfelbaum,* 445 U.S. 115, 122, 100 S.Ct. 948, 952, 63 L.Ed.2d 250 (1980). See *Kastigar v. United States,* 406 U.S. 441, 447, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972). In opposing the grant of immunity here, the Defendant first argues that there is "no language in either the Organized Crime Control Act of 1970 or the legislative history of the Act which suggests that Congress intended or expected that the provisions of the Act be applied in situations ... which are civil proceedings and which are wholly distinct from and unrelated to organized crime prosecutions." Brief of Defendant (Doc. # 33) at 3.

■ In considering this issue of statutory construction, the Court is mindful that our analysis "must begin with the language of the statute itself", *Dawson Chemical Co. v. Rohm & Haas Co.,* 448 U.S. 176, 187, 100 S.Ct. 2601, 2609, 65 L.Ed.2d 696 (1980), and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). See *Bread Political Action Committee v. Federal Election Commission,* 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982); *United States v. Apfelbaum, supra,* 445 U.S. at 121, 100 S.Ct. at 952. As previously set forth, section 6003(a) empowers the district court to issue an immunity order against "any individual" who has invoked his privilege against self-incrimination "at any proceeding before or ancillary to a *court of the United States.*" (emphasis added). This underscored phrase is defined as including:

"... the Supreme Court of the United States, a United States court of appeals, a United States district court established under chapter 5, title 28, United States Code, a United States bankruptcy court established under chapter 6, title 28, United States Code, the District of Columbia Court of Appeals, the Superior Court of the District of Columbia, the District Court of Guam, the District Court of the Virgin Islands, the United States Claims Court, the Tax Court of the

---

**3.** Section 6002 provides:
Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before an ancillary to—
   (1) a court or grand jury of the United States, ... and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

United States, the Court of International Trade, and the Court of Military Appeals."

18 U.S.C. § 6001(4). This same terminology is utilized in § 6002(1). See footnote 3, *supra*. Therefore, assuming, as we must, "that the legislative purpose is expressed by the ordinary meaning of the words used", *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962), we can discern nothing in the wording of the pertinent provisions of the immunity statute which would support the Defendant's contention that it cannot be employed in civil proceedings. Moreover, as the Plaintiff points out, the Act expressly authorizes immunity grants in proceedings before several courts which have jurisdiction exclusively of civil matters, *i.e.,* the Bankruptcy Court, the United States Claims Court, the Tax Court and the Court of International Trade. See 18 U.S.C. § 6001(4). In view of such authorization to these civil courts, there is no sound reason for believing that when Congress used the term "United States district court" in that same definitional section, it intended to restrict the use of the immunity statute to solely criminal proceedings arising therein. Additionally, the Defendant has referred to nothing in the reported legislative history of this statute, nor has our independent research revealed anything, which would permit such a limited construction of the scope of 18 U.S.C. §§ 6002–6003. See 1970 U.S. Code Congressional and Administrative News, pp. 4007–91.

Turning to a consideration of the decisional law on this issue, we note at the outset that the United States Supreme Court has yet to directly address the question. *Pillsbury v. Conboy, supra*, 103 S.Ct. at 616 n. 20.[4] Those federal courts that have passed upon similar defense contentions, however, have uniformly approved, whether implicitly or explicitly, of the use of the immunity statute in civil proceedings. See *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 541–42 (7th Cir.

1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978); *Patrick v. United States*, 524 F.2d 1109, 1120–21 (7th Cir. 1975); *United States v. Cappetto,* 502 F.2d 1351, 1359 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 'L.Ed.2d 395 (1975). In *Cappetto,* an action brought by the United States under the civil remedies provision of the federal racketeering statutes, the Seventh Circuit provided the following persuasive reasoning:

> Since this was a civil proceeding, plaintiff was entitled to discovery as in any other civil case, and the court had the authority granted by the Federal Rules of Civil Procedure to enter appropriate discovery orders and to enforce those orders. Defendants have no more right to refuse to be sworn or to refuse to submit to questioning than any other party in a civil case. A defendant of course has the right under the Fifth Amendment to refuse to answer a specific question on the ground that the answer may tend to incriminate him. This right disappears, however, if use immunity is granted under 18 U.S.C. §§ 6002 and 6003, as it was to [the] defendant . . . . The immunity granted is coextensive with the privilege against self-incrimination, *Kastigar v. United States,* 406 U.S. 441, 461, 92 S.Ct. 1653 [1665], 32 L.Ed.2d 212 (1972), and therefore may be invoked only against criminal proceedings. Accordingly, testimony given by a party in a civil case under a grant of immunity may be used against that party in that case, although it cannot be used in any criminal proceeding against him.

502 F.2d at 1359. We concur in this reasoning and therefore conclude that the first ground advanced by the Defendant in opposition to the motion for an immunity order, *i.e.,* that the government may not grant immunity in a civil proceeding, is without merit. Such a conclusion, we believe, is consistent not only with the language of the

**4.** In this footnote in *Pillsbury,* the Court stated: We need not decide whether United States Attorneys, when designated by the Attorney General, presently have authority to immu-

nize the testimony of a witness in a civil proceeding when the Government determines that the public interest would be served.

statute, its legislative history, and the case law thereunder, but also with the general principles of law governing an individual's exercise of his Fifth Amendment privilege against self-incrimination. As noted by Justice (then Circuit Judge) Stevens in *Patrick v. United States, supra:*

> The Fifth Amendment provides that no person shall be compelled to be a witness against himself in a *criminal case.* A witness has no Fifth Amendment privilege against giving testimony detrimental to his interests *in a civil case* unless such testimony tends to incriminate him; if the risk of criminal consequences is removed by a grant of immunity, no Fifth Amendment objection remains.

524 F.2d at 1120–21 (emphasis by court). See *United States v. Apfelbaum, supra,* 445 U.S. at 125, 100 S.Ct. at 954 ("the privilege does not extend to consequences of a noncriminal nature, such as threats of liability in civil suits, disgrace in the community, or the loss of employment.") See also *Murphy v. Waterfront Commission,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (White, J., concurring); *Ullmann v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Our decision also comports with and reaffirms one of the most basic tenets of our American jurisprudence—the inherent power of the government to compel persons to testify in court, absent a specific and viable claim of privilege. See *Kastigar v. United States, supra,* 406 U.S. at 443–44, 92 S.Ct. at 1655–56; *Murphy v. Waterfront Commission, supra,* 378 U.S. at 93–94, 84 S.Ct. at 1610–11 (White, J., concurring).[5]

### B

▮▮▮ The Defendant next contends that the particular grant of immunity sought to be conferred upon him here would not be co-extensive with his Fifth Amendment privilege against self-incrimination. See *Kastigar v. United States, supra,* 406 U.S. at 449, 92 S.Ct. at 1658. Under 18 U.S.C. § 6002, no immunized testimony "may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." In this instance, Mahler notes that he has given statements in at least two other jurisdictions concerning the oil-discharging activities involved here. Thus, it is argued, if he "failed to be truthful in giving those statements, but he is truthful in testifying or producing evidence for the government under the grant of immunity sought here, he would nonetheless expose himself to a prosecution for perjury on the basis of a comparison between the statements given." Brief of Defendant (Doc. # 33) at 8. Such an argument, however, plainly misperceives the breadth of the immunity from criminal prosecution afforded by the federal immunity statute. As explained by the Court in *In Re Grand Jury Proceedings, Greentree,* 644 F.2d 348, 350 (5th Cir.1981):

> [I]t is well established that the exception under the immunity statute, 18 U.S.C. § 6002, which authorizes prosecution for perjury, ... forecloses the government from prosecuting an immunized witness for perjury based upon *prior* false statements. (emphasis by court).

Accord *In Re Grand Jury Proceedings, Horak,* 625 F.2d 767 (8th Cir.), *cert. denied,* 449 U.S. 840, 101 S.Ct. 117, 66 L.Ed.2d 47 (1980); *United States v. Berardelli,* 565 F.2d 24 (2d Cir.1977); *United States v. Watkins,* 505 F.2d 545 (7th Cir.1974); *United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973). Thus, if Mahler testifies truthfully under a grant of immunity in this case, he cannot be prosecuted for perjury on the basis of any inconsistent prior statements.[6]

---

**5.** In an oft-cited passage from his concurring opinion in *Murphy,* Justice White wrote:

> Among the necessary and most important of the powers of the States as well as the Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court or before grand juries or agencies.... Such testimony constitutes one of the Government's primary sources of information.

378 U.S. at 93–94, 84 S.Ct. at 1610–11 (footnote and citation omitted).

**6.** The grant of immunity under 18 U.S.C. §§ 6002–6003 will provide the Defendant with use and derivative use immunity from both

Accordingly, we decline to accept the Defendant's contention that the immunity granted under the statute would not be co-extensive with the scope of his Fifth Amendment privilege.

## II

■ As recently noted by the Supreme Court in *Pillsbury v. Conboy,* "Congress foresaw the courts as playing only a minor role in the immunizing process: 'The Court's role in granting the order is merely to find the facts on which the order is predicated.'" 103 S.Ct. at 613 n. 11, quoting from H.R. Rep. No. 91–1549, p. 43 (1970); H.R.Rep. No. 91–1188, p. 13 (1970). The district court's function is therefore largely ministerial, *In re Perlin,* 589 F.2d 260, 269 (7th Cir.1978); *In re Grand Jury Investigation,* 486 F.2d 1013, 1016 (3d Cir.1973), *cert. denied sub. nom.,* 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), in that the "district judge has no discretion to deny a request by the United States Attorney that a witness be granted immunity, so long as the request is proper in form." *United States v. Hollinger,* 553 F.2d 535, 548 (7th Cir.1977). See also *Thompson v. Garrison,* 516 F.2d 986 (4th Cir.), *cert. denied,* 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *United States v. Leyva,* 513 F.2d 774 (5th Cir.1975); *In re Lochiatto,* 497 F.2d 803 (1st Cir.1974); *In re Grand Jury Investigation, supra.*[7] We find that the instant request by the Plaintiff United States of America sufficiently complies with the procedural requirements of section 6003. See Documents # 25, 32. Therefore, in view of our foregoing discussion and rejection of the Defendant's objections to the government's issuance of immunity, we will grant the United States' motion for an immunity order.

An appropriate Order will be entered.

federal and state criminal prosecutions. *Murphy v. Waterfront Commission, supra;* see *In re Grand Jury Subpoena of Flanagan,* 691 F.2d 116, 121 (2d Cir.1982).

**7.** In *Matter of Doe,* 410 F.Supp. 1163 (E.D. Mich.1975), relied upon the Defendant herein, the Court stated that while its duties in reviewing a proposed immunity grant are largely min-

## ORDER

It is the order of this Court, in accordance with the provisions of 18 U.S.C. § 6002–6003, that Russell Mahler shall not be excused from testifying or providing other information in this case on the basis of his privilege against self-incrimination.

However, no testimony or other information furnished under this order (or any information directly or indirectly derived from such testimony or other information), may be used against Russell Mahler in any criminal case, except a prosecution for perjury, giving false statement, contempt, or otherwise failing to comply with this order.

It is therefore the order of this Court that Russell Mahler provide complete answers to Plaintiff's first set of interrogatories within twenty (20) days of the date of this Order; and that he provide all other testimony and information sought by the Plaintiff during discovery or during testimony at trial which he could otherwise refuse to give on the basis of his privilege against self-incrimination.

isterial, it still may deny an immunity order "in the face of a violation of a witness' constitutional rights." *Id.* at 1165; see *In Re Baldinger,* 356 F.Supp. 153, 170 (C.D.Cal.1973). Even assuming such discretionary review power exists, we find no infringement of the Defendant's constitutional rights in this case.